MRS. BEATRICE MARIE FIELD NOBLE v. MRS. PHYLLIS GANT FIELD PITTMAN.

(Filed 9 March, 1955.)

1. **Constitutional Law § 28: Judgments § 31: Divorce and Alimony § 21—**
    A property settlement contained in a decree of divorce entered by a court of another state is void in so far as it attempts to affect title to land in this state.

2. **Husband and Wife § 12c—Deed from wife to husband executed and delivered prior to divorce decree must conform to statutory requirements.**
    Decree of absolute divorce was rendered and quitclaim deed from the wife to the husband was executed the same day. The evidence was conflicting as to whether the deed was executed and delivered prior to the rendition of the divorce decree or was executed and delivered subsequent thereto. It was admitted that the requirements necessary to the validity of a deed from a married woman to her husband as prescribed by statute then in effect were not observed. *Held:* The conflicting evidence presents

a question for the jury as to whether the deed was executed and delivered prior to the rendition of the divorce decree, in which event it would be void, or whether it was executed and delivered subsequent thereto, in which event it would be valid. An instruction that if the deed were executed and delivered at approximately the same time as the rendition of the divorce decree as a simultaneous transaction, that the deed would be valid, is error.

BARNHILL, C. J., and DEVIN, J., took no part in the consideration or decision of this case.

APPEAL by plaintiff from *Patton, S. J.,* August 1954 "A" Term, BUNCOMBE.

This is a civil action for the recovery of a one-half undivided interest in a tract of land in Buckeye Cove, Swannanoa Township, Buncombe County, North Carolina. The material allegations in the complaint, briefly stated, are: The plaintiff was formerly the wife of Henry Field. During their marriage they acquired the disputed lands as tenants by the entireties. They were legally divorced on 8 September, 1944, in Wayne County, Michigan. Whereupon they became tenants in common, each owning a one-half undivided interest. Subsequent to the divorce, Henry Field married the defendant. The plaintiff asks that she be declared to be the owner of a one-half undivided interest in the land.

In the answer the defendant admits: (1) The plaintiff at one time was married to Henry Field; (2) the land in dispute was acquired during that marriage; (3) the plaintiff and Henry Field were divorced in the State of Michigan in 1944. Other material averments in the answer are that Henry Field acquired by deed and by judgment in the divorce action the interest of the plaintiff in the lands in controversy and that thereafter Henry Field conveyed the land to the defendant in fee simple; that she is now the owner in fee.

The plaintiff filed reply, averring "that any attempted order or judgment concerning said property entered therein is null and void because of the failure to comply with the statutory law of North Carolina;" that the purported deed is null and void for the same reason.

The plaintiff testified in substance that she and Henry Field were married 1 July, 1938. They bought the land in dispute, built a house and lived on the property for two or three years, then moved to Detroit, Michigan, where the divorce action between them was tried on 8 September, 1944. At nine o'clock on that day she and her uncle, Jim Owen, went to the office of her attorney, Mr. DeWitt, in the Hammond Building. Mr. Porter, the attorney for Henry Field, came to DeWitt's office. The plaintiff, her attorney and uncle, after the conference with Porter, went to the courthouse where the divorce decree was granted about 11:30 a.m.

Neither Mr. Field nor his attorney was present in court when the divorce was granted.

Jim Owen, uncle of the plaintiff, testified in substance: He went with the plaintiff to DeWitt's office about nine o'clock on the morning of 8 September, 1944. Mr. Porter came to DeWitt's office, brought with him the quitclaim deed from plaintiff to Field, a notary public was called in from some other office, the deed was signed and acknowledged before the Notary Public, Miss Virginia J. Marshall. Mr. Porter placed his o.k. on the proposed divorce decree, stated he had some other business to attend to, and left DeWitt's office. The witness, the plaintiff and Mr. DeWitt went to the courthouse where the divorce decree was entered about 11:30 a.m. Neither Field nor Porter, his attorney, was present in the court at any time during the divorce proceeding.

Clinton C. DeWitt testified by deposition: "I am an attorney . . . I was counsel of record for Beatrice Marie Field in the divorce case . . . The divorce judgment was entered on September 8, 1944, . . . it was at 11:30 in the morning. I saw Mrs. Field before I went to court . . . What purported to be a quitclaim deed was delivered at that time. It was delivered in my office about eleven o'clock, September 8. . . . the instrument was signed by Mrs. Field before the trial of the divorce matter and the granting of the decree."

The plaintiff, for the purpose of attack, introduced the quitclaim deed. It shows to have been acknowledged before Virginia J. Marshall, a notary public.

The defendant offered in evidence the following documents: (1) The decree of divorce entered 8 September, 1944, in the Circuit Court of the County of Wayne, State of Michigan; (2) the quitclaim deed dated 8 September, 19........, from Beatrice Field to Henry Field; (3) a fee simple deed dated 24 November, 1951, from Henry David Field to Phyllis Gant Field for the land in controversy.

The defendant offered by deposition the evidence of Norris A. Porter: "I am an attorney . . . I knew Henry Field . . . I represented him in a divorce case in 1944. His wife's name was Beatrice Field. Her attorney . . . was Mr. DeWitt. In the divorce action we finally agreed upon a property settlement. Mr. Field, by stipulation, withdrew his bill of complaint and answer to cross bill and we permitted Mrs. Field to take a decree of divorce uncontested on her cross bill . . . Mr. DeWitt and I did not have the parties in to discuss property settlement. They worked out the deal . . . and we merely prepared the necessary instruments. The wife was to sign the quitclaim deed to the husband and the husband was to pay the wife $500.00 . . . To the best of my memory on the date in question, I met Mr. DeWitt at the Assignment Clerk's office . . . I o.k.'d the divorce decree . . . and I did not stay when Mr. DeWitt was

assigned to the judge . . . To the best of my memory, I met Mr. DeWitt at about twelve o'clock in his office . . . Mrs. Field was there at the time . . . I witnessed her signature to the deed and delivered a check for $500.00. At that time I received a deed and certified copy of the divorce." Cross-examination: "I don't know who Virginia J. Marshall is. I never met her. I don't recall ever hearing her name before."

The defendant testified: "I was the wife of Henry Field. We were married November 11, 1948. He died December 28, 1951. We lived on the property in Buckeye Cove. I never heard of any claim of the plaintiff until the suit was brought."

The court submitted the following issue: "(1) Is the plaintiff the owner of an undivided one-half interest in the property described in the complaint?" The jury answered the issue, "No," and from the judgment dismissing the action, the plaintiff appealed.

*Don C. Young for plaintiff, appellant.*
*Harkins, Van Winkle, Walton & Buck for defendant, appellee.*

HIGGINS, J.   The outcome of this case in the trial below was made to depend upon the validity of the quitclaim deed signed, acknowledged and delivered on 8 September 1944, by Beatrice Marie Field to Henry Field. The examining or certifying officer before whom the execution of the deed was acknowledged did not take the privy examination of the grantor and did not certify that "it appeared to the satisfaction of such officer that the wife freely executed such contract and freely consented thereto at the time of her separate examination, and that the same is not unreasonable or injurious to her." Such were the requirements of the statute in effect at the time the deed was executed in order that a married woman might pass title to her husband to any part of her real estate. It may be noted that the privy examination of the wife was made unnecessary and the form of the further certificate was slightly changed by Chapter 73, Session Laws 1945 of the North Carolina General Assembly, ratified on 7 February 1945. Compliance with the statutory requirement in effect at the time the deed was executed was necessary to its validity. Failure to comply with the requirements rendered the deed of a married woman to her husband absolutely void. *Butler v. Butler,* 169 N.C. 584, 86 S.E. 507; *Caldwell v. Blount,* 193 N.C. 560, 137 S.E. 578.

It is conceded both in the briefs and on the argument here that the deed to Henry Field was not executed in the formality required in the case of a deed from a married woman to her husband. It is conceded, also, that if the deed was executed after the decree of divorce was entered in the Chancery Division of the Circuit Court of Wayne County, Michigan, then the certificate of the examining officer is in proper form and the

deed would be valid to pass title to the plaintiff's interest in the land in controversy. It may be conceded, also, if the deed was executed and delivered before the decree of divorce was entered, the deed would be void and would not pass title.

The defendant sets up as a defense to plaintiff's action the property settlement in the divorce decree, contending the decree gave to Henry Field the land in controversy in consideration of the payment by him of $500.00 in cash to the plaintiff; that the plaintiff is, therefore, estopped to deny title of the defendant, his grantor. The answer is that the Circuit Court of Wayne County, Michigan, was without power to enter any decree affecting title to land in North Carolina and to the extent the decree attempted to do so, it is void. *McRary v. McRary,* 228 N.C. 714, 47 S.E. 2d 27, and cases there cited.

The evidence in the case was conflicting as to the time of the execution and delivery of the plaintiff's deed to Henry Field. According to the plaintiff's evidence the deed was executed and delivered in Mr. DeWitt's office before the divorce decree had been entered. According to the defendant's evidence the deed was witnessed by Mr. Porter and delivered after the divorce had been granted. There is no evidence in the record indicating the deed was either executed or delivered at or during the hearing of the divorce proceeding. Notwithstanding the fact the deed and the certificate of acknowledgment recite that Beatrice Marie Field is a single woman, the former wife of Henry Field, all the evidence shows the divorce decree and the deed were prepared by the lawyers in anticipation of the divorce and before it was actually granted.

After delivering a clear, accurate and comprehensive charge on all other aspects of the case, the judge charged the jury as follows:

"(a) The Court further instructs you that if you find that the quit-claim deed which is in evidence in this cause from this plaintiff to Henry Field, purporting to convey the property described in the complaint, was signed by her and delivered to the grantee therein or his representative as a simultaneous transaction, that is, the granting of the divorce and the signing and delivery of the quit-claim deed occurred at or approximately the same time with the intention of the parties, that all of the actions be performed by all the parties as one transaction—simultaneous—then the Court instructs you that the deed in question would be a valid instrument and would transfer whatever title this plaintiff had to Henry Field; . . ."

The necessity for the certificate of acknowledgment in the manner provided for married women continued up to the moment the divorce decree was entered and became effective. Thereafter the plaintiff was free to contract as if she were unmarried. It is not enough for the wife to execute a deed without the certificate required of married women *"at or*

*approximately the same time as her divorce decree is granted."* She must be free *before* she executes and delivers the deed.

The evidence in the case presented a clear-cut question of fact. If the deed was executed before the divorce, it is void. If it was executed simultaneously with the divorce, it is void. If it was executed after the divorce, it is valid. The judge so should have instructed the jury. The instruction that if the signing and delivery of the deed and the granting of the divorce occurred at or approximately the same time with the intention of the parties that all of the actions be performed by all the parties as one transaction—simultaneous—that the deed in question would be valid, was erroneous.

This record does not present, and we do not decide, the question as to whether a deed executed by a married woman before divorce, and void for failure to comply with the statutory requirements as to its execution, can become valid by a delivery after divorce.

For the error in the charge, it is ordered there be a

New trial.

BARNHILL, C. J., and DEVIN, J., took no part in the consideration or decision of this case.