NGOC MING THI COURTNEY v. PHILIP GERALD COURTNEY

No. 7812DC403

(Filed 20 March 1979)

1. **Constitutional Law § 26— foreign judgment—collateral attack in N.C.—grounds**

    A judgment of another state may be attacked in North Carolina only upon the grounds of lack of jurisdiction, fraud in the procurement, or as being against public policy.

2. **Constitutional Law § 26.6; Judgments § 39— foreign judgment— order to convey N. C. realty—jurisdiction**

    A Texas court had jurisdiction in a divorce action to order defendant to convey to plaintiff the title to realty located in North Carolina, since the judgment did not purport to award or vest title to the North Carolina property in the nature of an *in rem* proceeding but operated strictly *in personam* and affected the realty only indirectly. Furthermore, the *in personam* decree affecting non-local realty was not contrary to the laws or policies of either North Carolina or Texas. The Texas judgment was thus entitled to full faith and credit in this State.

3. **Constitutional Law § 26.2; Judgments § 39— foreign judgment—collateral attack—fraud**

      A collateral attack on a foreign judgment on the basis of fraud was improper where the fraud alleged was not extrinsic but was merely intrinsic.

4. **Constitutional Law § 26.6; Judgments § 39— invoking jurisdiction of foreign court—estoppel to attack foreign judgment**

      Defendant was estopped from collaterally attacking the validity of a Texas judgment ordering him to convey to plaintiff property located in North Carolina where defendant invoked the jurisdiction of the Texas court by filing a petition for divorce in that state in which he asked the court to divide the property accumulated by the parties during their marriage.

5. **Constitutional Law § 26— foreign judgment—full faith and credit—alleged issues not material**

      Alleged issues of fact as to misrepresentations by plaintiff to a Texas court, unfairness of the Texas judgment, whether defendant had possession of certain personal property provided for in the judgment, and whether defendant had a fair opportunity to be heard at the Texas hearing were not "material" to a determination as to whether full faith and credit should be accorded to the Texas judgment, since none of those "facts" was related to issues of jurisdiction, fraud or public policy.

6. **Rules of Civil Procedure § 56.2— summary judgment for party with burden of proof**

      Summary judgment may be granted for a party having the burden of proof on the basis of that party's own affidavit when (1) there are only "latent" doubts as to the affiant's credibility, (2) the opposing party has not introduced material supporting his opposition and has failed to point up specific areas of impeachment and contradiction and failed to utilize G.S. 1A-1, Rule 56(f), and (3) summary judgment is otherwise appropriate.

APPEAL by defendant from *Guy, Judge.* Judgment entered 4 January 1978 in District Court, CUMBERLAND County. Heard in the Court of Appeals 5 February 1979.

The plaintiff and the defendant were married in 1969. On 23 August 1976, the defendant, serving on active duty with the United States Army at Fort Bragg, North Carolina, filed a petition in the 79th Judicial District Court of Jim Wells County, Texas. Defendant prayed for a divorce from the plaintiff, a citizen and resident of the State of North Carolina, for custody of the minor child born of the marriage, and for division of marital property. Defendant alleged that the parties accumulated a house and lot in Cumberland County, North Carolina, and three automobiles during the marriage and requested that the court divide the property in an equitable manner. Pursuant to temporary orders of the

79th Judicial District Court of Jim Wells County, Texas, defendant was ordered to pay the plaintiff 1/3 of his net monthly salary of $1,000 as alimony *pendente lite* pending a final decree in the divorce action or until further orders of the court. Both plaintiff and defendant personally appeared and were represented by counsel at the time of the temporary orders.

In accordance with Texas bifurcated divorce procedure, a hearing was held on 27 October 1976, before a jury, to determine the matter of divorce and child custody. On 29 October 1976, the 79th Judicial District Court of Jim Wells County, Texas, entered a judgment granting the parties a divorce and awarding custody of the minor child to plaintiff. Both parties were present for the 27 October 1976 hearing.

On 30 December 1976, a second hearing to determine child support and division of community property was held with the plaintiff and her counsel present. The record does not indicate whether defendant or his counsel received notice.

On 5 January 1977, final judgment was entered by the 79th Judicial District Court of Jim Wells County, Texas. The judgment ordered that the defendant transfer, quitclaim, and deed to the plaintiff the Cumberland County, North Carolina lot and house and several items of personal property including a one pound gold chain "presently in the possession of the petitioner" and "1/2 of 8 of the fraction of the number of years of active service until retirement if and when Philip Gerald Courtney retires and receives a retirement benefit."

The plaintiff was ordered to convey certain real property in Jim Wells County, Texas and certain personal property to the defendant.

On 3 February 1977, the plaintiff filed a complaint in Cumberland County District Court alleging that the defendant had failed to pay the plaintiff alimony *pendente lite* as provided by temporary orders of the 79th Judicial District Court of Jim Wells County and also that the defendant had failed to convey any property to the plaintiff pursuant to the final judgment of the 79th Judicial District Court of Jim Wells County, Texas. The plaintiff prayed, *inter alia*, that the Cumberland County District Court extend full faith and credit to the temporary and final

orders of the Texas court and adopt such judgments as its own. The defendant answered the complaint alleging that the 5 January 1977 order directing conveyance of certain North Carolina property was not permissible in that the state courts of Texas have no power or jurisdiction to divide or affect real property located in North Carolina; therefore, that judgment is not entitled to full faith and credit in North Carolina. He further alleged that his salary had been miscalculated for purposes of the temporary order, that no evidence concerning the existence and ownership of the real and personal property described in the final judgment was presented to the Texas court, and that the whereabouts of the one pound gold chain are unknown and have been unknown to the defendant before initiation of this action. The defendant further answered that his retirement benefits were not divisible, that the plaintiff had misrepresented the number of years of marriage resulting in a greater interest in the retirement benefits, and had misrepresented their leasehold interest in Texas realty as a fee ownership. Defendant also alleged that the division of property by the Texas court was inequitable, unfair and contrary to public policy. Defendant counterclaimed and prayed that, should any part of plaintiff's requested relief be granted, full faith and credit be extended to the Texas order and the plaintiff be required to convey certain properties to him pursuant to the Texas order.

On 13 September 1977, the plaintiff moved for summary judgment, her verified pleading serving as an affidavit. In that motion, plaintiff alleged that the defendant had personally invoked the jurisdiction of the Texas court to divide the property accumulated by the parties during marriage. Plaintiff alleged that she had not misrepresented the length of the marriage, that the defendant had acknowledged possession of the gold chain after initiation of Texas proceedings, and that the parties did own the lot in Texas. Further, she alleged that defendant, in his original petition for divorce in Texas, requested the Texas court to make equitable division of their marital properties specifically including the Cumberland County, North Carolina lot.

The motion was heard on 14 November 1977, with both parties present. On 4 January 1978, the Cumberland County District Court granted the plaintiff's motion for summary judgment, finding that the defendant had refused to convey the property to the

plaintiff and that the plaintiff had at all times been ready, willing and able to comply with the judgment. The trial court found that the Texas court had personal jurisdiction over the parties. In its conclusions of law, the court found that the defendant personally invoked the jurisdiction of the Texas court and was now estopped from challenging the jurisdiction of the Texas court to make division of the real property, that the defendant's contention concerning plaintiff's misrepresentations, the equities of property division, the lack of possession of certain items of property, and the misapplication of Texas law are questions of law or fact to be properly determined in the Texas court but that they do not deprive the Texas final judgment of full faith and credit in North Carolina. The trial court concluded that the judgment of the Texas court was entitled to full faith and credit in the courts of North Carolina and ordered the defendant to convey the properties to the plaintiff as provided in the Texas judgment. From this judgment, defendant appealed.

*Barrington, Jones, Witcover & Carter, by Jack E. Carter, for plaintiff appellee.*

*Clark, Shaw, Clark & Bartelt, by Robert H. Bartelt, for defendant appellant.*

CARLTON, Judge.

Defendant's primary contention is that the judgment of the Texas court is not entitled, as a matter of law, to full faith and credit in the courts of North Carolina. He argues that the Texas court had no jurisdiction to affect title to realty located in North Carolina, that the judgment is in contravention of the laws and policies of North Carolina and Texas, and that there was fraud in the procurement of the judgment.

Under the provisions of Article IV, § 1 of the United States Constitution it is required that full faith and credit be given to a judgment of a court of another state. *Thrasher v. Thrasher*, 4 N.C. App. 534, 167 S.E. 2d 549 (1969), *cert. denied* 275 N.C. 501 (1969); *Thomas v. Frosty Morn Meats*, 266 N.C. 523, 146 S.E. 2d 397 (1965).

[1] A judgment of a court of another state, however, may be attacked in North Carolina, but only upon the grounds of lack of

jurisdiction, fraud in the procurement, or as being against public policy. 2 Strong, N.C. Index 3d, Constitutional Law, § 26, p. 247; *In re Blalock*, 233 N.C. 493, 64 S.E. 2d 848 (1951); *Howland v. Stitzer*, 231 N.C. 528, 58 S.E. 2d 104 (1950). There is a presumption in favor of the validity of the judgment of a court of another state, and therefore the burden to overcome such presumption rests upon the party attacking the judgment. 1 Lee, N.C. Family Law 3d, § 92, p. 353.

It is a well-established principle that a local sovereignty by itself, or its judicial agencies, can alone adjudicate upon and determine the status of land within its borders, including its title and incidents and the mode in which it may be conveyed. *McRary v. McRary*, 228 N.C. 714, 47 S.E. 2d 27 (1948); *Davenport v. Gannon*, 123 N.C. 362, 31 S.E. 858 (1898). The absence of jurisdiction of the *res* is responsible for the principle, as a court not having jurisdiction of the *res* cannot affect it by its decree. *McRary v. McRary, supra; see also Fall v. Eastin*, 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65 (1909).

**[2]** The distinction between *in personam* judgments ordering the conveyance of non-local realty and strictly *in rem* actions to partition or divest title in realty was drawn in *McRary*. Justice Barnhill referred to the familiar principle that a court having jurisdiction of the parties may, in a proper case, by a decree *in personam*, require the execution of a conveyance of real property in another state.

In *McRary*, an Ohio divorce decree attempted to vest title to jointly-held North Carolina realty in the plaintiff-wife free from any claim by her husband. The Ohio order provided that the wife "have and possess . . . [the North Carolina] said entire premises . . ." free from any claims of her husband. It further provided that if the defendant did not convey the property within 5 days from the judgment, "this decree shall operate as said conveyance." Our Supreme Court held that such vesting of title was, in fact, a *muniment* of title, and the Ohio judgment, insofar as it attempted to affect title to the *locus* in North Carolina, was a nullity. Being a proceeding strictly *in rem*, the Ohio court was without jurisdiction to convey title to North Carolina realty.

The judgment in *McRary* and the case at bar are distinguishable. In the instant case, the Texas court specifically provided:

It is further ORDERED, ADJUDGED AND DECREED that Philip Gerald Courtney CONVEY, TRANSFER, QUITCLAIM and DEED to Ngoc Ming Thi Courtney the following described properties:

Lot 159, Portion 158, revised lot K & F of KNOWNVOW (sic) Lake Subdivision, Cumberland County, North Carolina . . . . (Emphasis added.)

Unlike the Ohio decree, the Texas judgment here merely ordered the defendant to convey the North Carolina realty. It did not purport to award or vest title consonant with the nature of an *in rem* proceeding, but operated strictly *in personam* and attempted to affect the realty only indirectly.

*In personam* decrees affecting non-local realty are neither against the laws or policies of this State, nor the laws and policies of the State of Texas. In *McElreath v. McElreath*, 162 Tex. 190, 345 S.W. 2d 722 (1961), the court held that the provisions of an Oklahoma divorce decree dealing with Texas realty were in the nature of an *in personam* decree and did not directly affect title to the Texas land. The court further found that the Oklahoma decree operated as an estoppel in the nature of *res judicata* and that the Oklahoma order created certain equitable rights which were not precluded on public policy grounds in Texas. Other Texas cases clearly recognize the right of the sister states to issue *in personam* judgments directing the parties, properly before the court, to make dispositions of non-local realty. *Milner v. Schaefer*, Texas Civ. App., 1948, 211 S.W. 2d 600; *Greer v. Greer*, Texas Civ. App., 1945, 189 S.W. 2d 164 *reversed on other grounds*, 144 Tex. 528, 191 S.W. 2d 848 (1946). In North Carolina, *Lea v. Dudley*, 20 N.C. App. 702, 202 S.E. 2d 799 (1974) reiterated, citing McRary, *supra*, that any part of a foreign decree which attempted to determine ultimate title to North Carolina realty was void. The operative effect of *in personam* decrees, however, was recognized. Judge Campbell stated:

However, a court of competent jurisdiction in the state of incorporation with all necessary parties properly before it in an action for the dissolution of a corporation generally has the power and authority to render a decree ordering the EXECUTION AND DELIVERY OF A DEED TO PROPERTY IN ANOTHER STATE to the shareholders of the corporation as successors in title to the assets of the corporation. Such an order must be

considered to be *in personam* in character as the Virginia Court could not have *in rem* jurisdiction over a *res* located in North Carolina. As between the parties to the Virginia litigation, the decree is *res judicata* . . . . *Lea v. Dudley, supra,* at page 704. (Emphasis added.)

In the instant case, the Texas court has not exceeded its jurisdictional powers nor contravened any law or public policy of North Carolina or Texas. Apparently recognizing its limited jurisdiction, it never attempted to vest any muniment of title in North Carolina realty, as did the Ohio court in *McRary*. Therefore, the *in personam* judgment directing the conveyance of North Carolina realty is entitled to full faith and credit in this State.

[3] Defendant next contends that the judgment of the Texas court was subject to collateral attack in the courts of North Carolina because it was procured fraudulently. This contention is also without merit.

It is true that fraud may present a proper basis for a court's refusal to extend full faith and credit to the judgment of a sister state. *Thrasher v. Thrasher, supra, Donnell v. Howell,* 257 N.C. 175, 125 S.E. 2d 448 (1962). In *Donnell,* the plaintiff and defendant stipulated that they perpetrated a fraud upon the Alabama court by making false representations as to the true residence of the plaintiff. The Alabama judgment was not entitled to full faith and credit in this State, as a consequence of this fraud.

In the present case, defendant asserts that triable issues of fact, concerning fraud, exist. He alleges in his answer misrepresentations of fact by the plaintiff, lack of evidence, and non-possession of the gold chain.

To make a successful attack upon a foreign judgment on the basis of fraud, it is necessary that extrinsic fraud be alleged. In *Horne v. Edwards,* 215 N.C. 622, 624, 3 S.E. 2d 1 (1939) Judge Seawell stated the general rule:

It has been held by much the greater weight of authority in American courts that equity will not interfere in an independent action to relieve against a judgment on the ground of fraud unless the fraud complained of is extrinsic and collateral to the proceeding, and not intrinsic merely—that is,

arising within the proceeding itself and concerning some matter necessarily under the consideration of the court upon the merits. (Citations omitted.)

In the case of *Hat Co. Inc. v. Chizik*, 223 N.C. 371, 26 S.E. 2d 871 (1943), the defendant, challenging a foreign judgment, alleged that the plaintiff had made false representations during the course of the trial in the foreign tribunal. Our Supreme Court held that false testimony given at trial is not extrinsic fraud, and thus cannot form the basis of an attack upon a foreign judgment.

Upon a review of the record, it is apparent that the defendant has nowhere alleged extrinsic fraud. For this reason, his collateral attack on the basis of fraud is improper.

[4] Defendant argues that the imposition of collateral estoppel against him was improper. Defendant proceeds, in this argument, on the assumption that the jurisdiction of the Texas court was *in rem* in nature, that the Texas order was not entitled to full faith and credit, and, therefore, not subject to application of the doctrine of collateral estoppel. We do not agree.

In his original petition to the Texas court, the defendant alleged the existence of jointly-held property in North Carolina and asked the Texas court to make an equitable division of the North Carolina realty. The Texas court, having jurisdiction of the parties, entered a judgment ordering the defendant personally to convey title to the North Carolina realty to the plaintiff. The judgment of the Texas court did not attempt to vest title of the property in plaintiff, but operated clearly *in personam* in the form of an order directed personally at the defendant. The decree of the Texas court, is therefore *res judicata* as between the parties.

This Court specifically held in *Thrasher* that full faith and credit bars a collateral attack by either party on jurisdictional grounds in the court of the sister state when the defendant participated in the proceedings and was accorded the full opportunity to contest the jurisdictional issues.

In an annotation at 3 A.L.R. 535 the rule is stated:

The party at whose instance a judgment is rendered is not entitled, in a collateral proceeding, to contend that the judgment is invalid. Neither want of jurisdiction, defect of

procedure, or any other ground of invalidity can be availed of collaterally, by the party who is responsible for the existence of the judgment.

To allow one who himself has invoked the jurisdiction of a foreign court to escape an unfavorable judgment would be contrary to all notions of fair play and justice.

[5] The defendant finally argues that genuine issues of material fact existed; therefore, the trial court's granting of the plaintiff's motion for summary judgment was error. We do not agree.

In the motion for summary judgment, the plaintiff sought specific performance of the Texas judgment. G.S. 1A-1, Rule 56(c) provides, in substance, that any party to a civil action may move for judgment in his favor on any claim, counterclaim, crossclaim, or declaratory judgment action as to which there is no genuine issue as to any material fact, and as to which the moving party is entitled to judgment as a matter of law. The only grounds upon which the defendant could challenge the plaintiff's right to specific performance of the Texas judgment in North Carolina are lack of jurisdiction, fraud in the procurement, or as being against public policy. *Thrasher v. Thrasher, supra.* However, the defendant alleges as material issues of fact misrepresentations by the plaintiff to the Texas court, unfairness of the Texas judgment, whether the defendant had possession of the gold chain, and whether the defendant had a fair opportunity to be heard at the Texas hearing.

These questions of fact were not properly before the North Carolina court but should have been raised in the Texas court at the hearing or on appeal. In applying the rules set out in *Thrasher*, it is obvious that none of these "facts" was related to the issues of jurisdiction, fraud, or public policy; hence, they were not facts *material* to this action. In considering the motion for summary judgment, the trial court correctly concluded that there were no genuine issues as to any material fact concerning the granting of full faith and credit to the Texas judgment and, therefore, properly determined that specific performance was appropriate.

[6] Summary judgment will not ordinarily be proper for a party with the burden of proof when the motion is supported only by

his own affidavits. However, summary judgment may be granted for a party having the burden of proof, on the basis of that party's own affidavit when (1) there are only "latent" doubts as to the affiant's credibility, (2) the opposing party has not introduced material supporting his opposition and has failed to point up specific areas of impeachment and contradiction and failed to utilize G.S. 1A-1, Rule 56(f), and (3) summary judgment is otherwise appropriate. *Kidd v. Early*, 289 N.C. 343, 222 S.E. 2d 392 (1976).

Pursuant to the rules established in *Kidd*, and for the reasons stated above, we hold that the trial court properly granted plaintiff's motion for summary judgment extending full faith and credit to the Texas judgment.

The judgment below is

Affirmed.

Chief Judge MORRIS and Judge MARTIN (Harry C.) concur.